WHEELER, CROSS-APELLANT, *v.* STATE FARM MUTUAL AUTOMOBILE INS. CO., APPELLANT; ET AL., APPELLEES.*

*Motion and cross-motion to certify the record overruled (37714), December 12, 1962.

(No. 25787—Decided June 21, 1962.)

Messrs. *Hauxhurst, Sharp, Cull & Kellogg* and Mr. *Burt J. Fulton*, for cross-appellant.

Messrs. *Meyers, Stevens & Rea*, for appellant.

Mr. *Arthur E. Griffith*, for appellee American Indemnity Company.

Mr. *A. H. Dudnik*, for appellees Donnelly.

KOVACHY, P. J.   This is an appeal on questions of law from a judgment entered in the Court of Common Pleas of Cuyahoga County.   The action was one for a declaratory judgment to determine whether one or both of two insurance companies are required under their respective policies to defend plaintiff, Kenneth M. Wheeler, in two tort actions which had been filed against him in the Court of Common Pleas as a result of an accident that took place while he was driving an automobile ostensibly borrowed from an automobile dealer as a substitute for his own automobile while it was undergoing repairs with the dealer.

Wheeler purchased a 1957 Ford automobile from the East End Nash Company, Inc., on November 4, 1957, and at the same time turned in a 1953 Dodge automobile which he owned, as part payment of the purchase price.  He had purchased the 1953 Dodge in West Virginia before coming to Ohio to live, in November 1956.   The following facts were stipulated and agreed as true by counsel for all the parties:

"1. Plaintiff, Kenneth M. Wheeler, entered into a transaction with East End Nash Company, Inc., for the purchase of a 1957 Ford on November 4, 1957, and that 'Exhibit A' was executed by him and a duly constituted agent of East End Nash Company, Inc.

"2. That on November 4, 1957, or November 5, 1957, Kenneth M. Wheeler delivered to East End Nash Company, Inc., the following documents:

"a. West Virginia title number B 436 issued in the name of Kenneth M. Wheeler and properly endorsed in blank by Kenneth M. Wheeler.

"b. Application for Ohio title, properly signed by Kenneth M. Wheeler on the 1953 Dodge automobile.

"c. Power of Attorney from Kenneth M. Wheeler to East End Nash Company, Inc., appointing East End Nash Company, Inc., his attorney to execute transfer of title to the 1953 Dodge from Kenneth M. Wheeler to East End Nash Company, Inc., properly executed by Kenneth M. Wheeler.

"d. Affidavit for use tax exemption on conversion on out of state title on said 1953 Dodge, properly executed by Kenneth M. Wheeler.

"3. That on November 6, 1957, East End Nash Company, Inc., mailed its check in the amount of $337.50 to Community Savings & Loan Company of Clarksburg, West Virginia, representing payment in full on conditional sales contract.

"4. That on November 7, 1957, C. B. Taylor, vendor under the conditional sales contract, properly executed a release of lien on the 1953 Dodge as per 'Exhibit B' attached hereto.

"5. That on December 5, 1957, East End Nash Company, Inc., caused Ohio title to be issued in the name of Kenneth M. Wheeler by the clerk of courts of Summit County, on the 1953 Dodge.

"6. That on December 6, 1957, pursuant to power of attorney given to it on November 4, 1957, or November 5, 1957, by Kenneth M. Wheeler, East End Nash Company, Inc., caused Ohio title to the 1953 Dodge to be issued by the clerk of courts of Cuyahoga County, in its name."

On November 11, 1957, the 1957 Ford purchased by Wheeler developed a broken spring, and under the purchase warranty Wheeler returned the car to East End Nash for repairs and was given his former car, the 1953 Dodge, to drive while his 1957 Ford was being repaired. The 1953 Dodge had dealer plates of East End Nash on it. On November 13, 1957, while driving the 1953 Dodge, Wheeler had an accident which resulted in two actions for personal injuries being filed against him as noted above. These actions, now pending in the Common Pleas Court, await the final outcome of the instant lawsuit.

State Farm Mutual Automobile Insurance Company, de-

fendant-appellant, had issued a "National Standard Combination Automobile Policy" to Wheeler covering the 1953 Dodge, on July 27, 1957, for the policy period ending February 9, 1958.

The American Indemnity Company, defendant-appellee, had issued a "Comprehensive Liability Policy" containing a "General-Automobile-Garage" endorsement to East End Nash for the policy period of June 9, 1957, to June 9, 1958.

The trial court found and declared that at the time of the accident on November 13, 1957, Wheeler was still the owner of the 1953 Dodge, that the policy of public liability insurance issued on that automobile by State Farm insured and protected Kenneth M. Wheeler while driving the 1953 Dodge on the day of the accident, and that the public liability policy of American issued to East End Nash did not insure and protect Wheeler. The trial court entered judgment for the plaintiff, Kenneth M. Wheeler, on his petition against State Farm "but against said plaintiff and in favor of American Indemnity Company on the plaintiff's cross petition against said new party defendant"; and entered judgment in favor of American Indemnity Company and against State Farm Mutual Automobile Insurance Company upon State Farm's cross-petition. As a result of such determination, the trial court ordered State Farm to undertake and proceed immediately to defend and indemnify Kenneth M. Wheeler in the tort actions pending against him and relieved the American Indemnity Company of any responsibility in defending or indemnifying Kenneth M. Wheeler in those tort actions. The trial court also found and declared that State Farm and American had agreed that:

(a) If State Farm was required to defend Wheeler, it would reimburse American for services rendered and expenses incurred by Jones Claims Service and for services rendered by Arthur E. Griffith, attorney-at-law, in the investigation and defense of the claims and actions flowing from the accident of Wheeler;

(b) Whichever company was finally determined to be obligated to defend Wheeler would pay Burt J. Fulton, attorney-at-law, the reasonable value of his services in prosecuting the declaratory judgment action from and after the second pretrial hearing.

As a consequence, the trial court ordered that State Farm

reimburse American for services rendered by Arthur E. Griffith in the sum of $500 and that State Farm pay Burt J. Fulton the sum of $875.

Defendant-appellant, State Farm Mutual Automobile Insurance Company, states as its first assignment of error that the trial court erred to its prejudice in finding that Kenneth M. Wheeler was the owner of the 1953 Dodge on November 13, 1957. It contends that, under the admitted facts, the ownership of the 1953 Dodge was in East End Nash on November 13, 1957, that its insurance policy therefore did not cover the 1953 Dodge at the time of Wheeler's accident, and that Wheeler should look to the policy of insurance issued by American to East End Nash for protection and coverage in the tort actions pending against him.

Defendant-appellee, American Indemnity Company, maintains that Wheeler did not part with ownership of the 1953 Dodge until December 6, 1957, when an Ohio certificate of title was issued in the name of East End Nash, twenty-two days after the accident, that Wheeler was still the owner of the 1953 Dodge at the time of the accident, and that Wheeler must look to State Farm for protection and coverage in the tort actions pending against him.

Applicable provisions of the State Farm policy read:

"INSURING AGREEMENTS

"1. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"* * *

"IV. Automobile Defined, * * *.

"(a) Automobile. * * * except where stated to the contrary, the word 'automobile' means:

"(1) Described Automobile. The motor vehicle or trailer described in this policy:

"(2) * * *

"(3) Temporary Substitute Automobile. Under coverages A, B and division 1 of coverage C, an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction:

"(4) Newly Acquired Automobile. An automobile, ownership of which is acquired by the named insured * * *, if (1) it replaces an automobile owned by either and covered by this policy, * * *.

"CONDITIONS

" * * *

"17. Other Insurnace—Coverages A, B, D, E, F, G & H. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; * * *."

It is clear from these provisions of the policy of insurance issued to Wheeler by State Farm that if Wheeler was the *owner* of the 1953 Dodge at the time of the accident, he is covered under its terms and can look to State Farm for a defense to the lawsuits pending against him and indemnification within the limits of the policy.

A part of Section 4505.03, Revised Code, part of the Certificate of Motor Vehicle Title Law of Ohio, pertinent to our consideration here reads:

"No person * * * shall sell or otherwise dispose of a motor vehicle without delivering to the purchaser or transferee thereof a certificate of title with such assignment thereon as is necessary to show title in the purchaser; * * *."

Section 4505.06, Revised Code, in parts pertinent to our consideration here reads:

"Application for a certificate of title shall be made upon a form prescribed by Section 4505.07 of the Revised Code, and shall be sworn to before a notary public or other officer em-

powered to administer oaths. Such application shall be filed with the clerk of the Court of Common Pleas of the county in which the applicant resides if the applicant is a resident of this state or, if not a resident, in the county in which the transaction is consummated. Such application shall be accompanied by the fee prescribed in Section 4505.09 of the Revised Code; and if a certificate of title has previously been issued for the motor vehicle in this state, it shall be accompanied by said certificate of title duly assigned, unless otherwise provided in Sections 4505.01 to 4505.19, inclusive, of the Revised Code. *If a certificate of title has not previously been issued for such motor vehicle in this state, said application,* unless otherwise provided in such sections, *shall be accompanied * * * by a certificate of title, bill of sale, or other evidence of ownership required by the law of another state from which such motor vehicle was brought into this state.* The clerk shall retain the evidence of title presented by the applicant and on which the certificate of title is issued. The clerk shall use reasonable diligence in ascertaining whether or not the facts in said application are true by checking the application and documents accompanying it with the records of motor vehicles in his office; if satisfied that the applicant is the owner of such motor vehicle and that the application is in the proper form, the clerk shall issue a certificate of title over his signature and sealed with his seal.'' (Emphasis ours.)

The plain language employed by the Legislature of Ohio in these sections of the Certificate of Motor Vehicle Title Law makes it clear that a person when selling an automobile in Ohio *must* deliver an *Ohio* certificate of title for the automobile to the purchaser ''with such assignment thereon as is necessary to show title in the purchaser * * *.'' And even when a person sells an automobile that he brought into Ohio from another state and holds proof of ownership to the same in himself in the form of a certificate of title issued by the other state in accordance with the laws of such other state, he, nevertheless, is required to apply for and obtain an Ohio certificate of title to such motor vehicle in his own name and to deliver the same to the purchaser with an assignment thereon showing title in the purchaser.

The facts in this case disclose that Wheeler made arrangements to comply with this requirement of the law with respect to his 1953 Dodge. However, at the time of his accident on No-

vember 13, 1957, no Ohio certificate of title as yet existed as to such automobile, and, *ergo,* no assignment of the title could have been made to East End Nash. While it is true that Wheeler had signed a power of attorney authorizing East End Nash "to execute transfer of title of the 1953 Dodge," by which East End Nash had it within its power to consummate the sale and to place title to the 1953 Dodge in its own name, the fact remains that an Ohio certificate of title in the name of Wheeler had not been obtained until many days after the accident, and that it was impossible for East End Nash to exercise its authority until such document was actually in existence. Under these facts and the applicable law, it necessarily follows that the ownership of the 1953 Dodge remained with Wheeler and the same was not alienated until December 5, 1957, when for the first time an assignment by East End Nash under the power of attorney could be affixed on the Ohio certificate of title issued to Wheeler showing title to the 1953 Dodge in itself as purchaser in accordance with Section 4505.03, Revised Code.

Consequently, it seems manifest to us that Wheeler was still the owner of the 1953 Dodge on the day of his accident and that the insurance policy issued to him by State Farm affords him coverage for the accident.

We accordingly overrule assignment of error number one of the defendant-appellant, State Farm Mutual Automobile Insurance Company.

The applicable provisions of the American policy issued to East End Nash Co. of Cleveland, Inc., read:

"Coverages                    Limits of Liability
"A  Bodily Injury Liability    $100,000.00  each  person
                              $300,000.00  each  accident
"B  Property Damage
      Liability - Automobile    $ 25,000.00  each  accident
"Endorsements G158a and G616 attached to Policy
                "Insuring Agreements

"I Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.

"Coverage B—Property Damage Liability—Automobile.

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile.

"II Defense, Settlement, Supplementary payments. With respect to such insurance as is afforded by this policy, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *.

"A. Hazard Defined.

"The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance or *use of any automobile* in connection with the above defined operations, and the occasional use for other business purposes * * *.

"B. Definition of Insured.

"The Definition of Insured Agreement of the policy is amended to read as follows:

"The unqualified word 'insured' includes the named insured and also includes (1) * * * and (2) any person while using an automobile covered by this endorsement, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. This definition does not include:

"(a) * * *

"(b) Any partner, employee, director, stockholder, or *additional insured with respect to any automobile owned by him* * * *." (Emphasis ours.)

Wheeler, by reason of the provision that an insured "does not include * * * any * * * additional insured with respect to any automobile owned by him," is not covered by the American insurance policy.

Upon a consideration of the remaining assignments of er-

ror, we determine that there were no errors prejudicial to the substantial rights of the appellant and overrule the same.

In view of our conclusions set out above, we overrule the assignments of error of the plaintiff, Kenneth M. Wheeler, set forth in his cross-appeal.

Accordingly, the judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

SKEEL and HURD, JJ., concur.

SKEEL, J., concurring. In concurring with the decision entered in this appeal, it is necessary to call attention to Sections 4549.12 and 4503.10, Revised Code. The facts are clearly and correctly stated in the opinion of Judge Kovachy. One additional fact should be stressed, and that is that Wheeler became a resident of Ohio sometime prior to the purchase of the Ford automobile from East End Nash in which transaction he turned in his 1953 Dodge and made an assignment to Nash of his West Virginia certificate of title, as set out in the statement of fact. This would have been sufficient to transfer title of the Dodge to East End Nash if Wheeler had remained a resident of West Virginia. Section 4505.03, Revised Code, provides:

"No person, except as provided in Section 4505.05 of the Revised Code, shall sell or otherwise dispose of a motor vehicle without delivering to the purchaser or transferee thereof a certificate of title with such assignment thereon as is necessary to show title in the purchaser; nor shall any person purchase or otherwise acquire a motor vehicle without obtaining a certificate of title for it in his name in accordance with Sections 4505.01 to 4505.19, inclusive, of the Revised Code."

It is to be observed that the duty of the seller of an automobile is to transfer and assign "a" certificate of title to the automobile to the purchaser. The duty of an Ohio purchaser is to "obtain a certificate of title" under Ohio law with the use of the title papers assigned to him by the seller.

As a resident of West Virginia, the assignment of the West Virginia certificate would satisfy the statute. But such a certificate could not effect a transfer of title to such automobile

when the seller is a resident of Ohio. Section 4549.12, Revised Code, provides:

"No person who is the owner of a motor vehicle and a resident of this state shall operate or drive such motor vehicle upon the highways of this state, while it displays a distinctive number or identification mark issued by or under the authority of another state, without complying with the laws of this state relating to the registration and identification of motor vehicles."

The first paragraph of Section 4503.10, Revised Code, provides:

"Every owner of a motor vehicle and every person mentioned as owner in the last certificate of title, bill of sale, or sworn statement of ownership of a motor vehicle which is operated or driven upon the public roads or highways shall, before the first day of April of each year cause to be filed, by mail or otherwise, in the office of the registrar of motor vehicles or a deputy registrar, a written application in not less than triplicate for registration for the following registration year, beginning the first day of April of such registration year, on blanks to be furnished by the registrar for that purpose, containing the following information:"

It seems obvious, therefore, in giving full consideration to these sections, that an Ohio resident, who is the owner of an automobile, before he can sell the same, under the provisions of Section 4505.03, Revised Code, must obtain an Ohio certificate of title and pay the license fee for the registration of such vehicle. The tax for Ohio license plates must be paid and noted on the certificate of title. The certificate of title of a resident of Ohio that must be assigned by a seller of his used automobile, under the provisions of Section 4505.03, Revised Code, is an Ohio certificate of title without which he cannot transfer title to a purchaser. The plaintiff, not having complied with the foregoing sections before the time of the accident, was still the title holder of the Dodge automobile and his insurance carrier, therefore, was liable under its contract of insurance.